## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL MINNIFIELD, | : |
| Plaintiff, | : |
| | : |
| v. | :   Case No. 3:14-cv-1580 (VAB) |
| | : |
| ERIN DOLAN, ET AL., | : |
| Defendants. | : |

## <u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Wendell Minnifield, is currently incarcerated at MacDougall-Walker

Correctional Institution, in Suffield, Connecticut ("MacDougall-Walker").  Mr. Minnifield

initiated this action by filing a Complaint *pro se* against Defendants, Nursing Supervisor Erin

Dolan, Nursing Supervisor Heidi Greene, and Dr. James O'Halloran, under 42 U.S.C. § 1983.

On February 9, 2015, the Court dismissed Mr. Minnifield's claims against Ms. Greene and Dr.

O'Halloran, as well as the claims for money damages against Ms. Dolan in her official capacity.

The Court concluded that Mr. Minnifield's claims of deliberate indifference to medical needs

would proceed against Ms. Dolan in her individual capacity and official capacity.  The Court

then permitted Mr. Minnifield to file an Amended Complaint within thirty days, provided that he

could describe the nature of his alleged serious medical condition and specifically allege how Dr.

O'Halloran and Nursing Supervisor Greene were involved in the claimed deliberate indifference

to his serious medical need.

On March 24, 2015, Mr. Minnifield filed an Amended Complaint that listed Nursing

Supervisor Erin Dolan, Nursing Supervisor Heidi Greene and Dr. O'Halloran as Defendants.

On November 24, 2015, the Court dismissed the claims against all Defendants for monetary

damages in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2).  The Court concluded that the claims of deliberate indifference to medical needs would proceed against Defendants Dolan, Greene and O'Halloran in their individual and official capacities.

Pending before the Court is a motion for summary judgment filed by Defendants.  For the reasons set forth below, the motion will be **GRANTED**.

## I.      Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).   Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor."  *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).  If there is any evidence in the record from which a reasonable factual inference could be drawn

in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest."  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted).  Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## II.    Factual Allegations[1]

Since 1999, Mr. Minnifield has suffered from a chronic condition called folliculitis that is also known as dissecting cellulitis.  The condition causes hair follicles to grow into the scalp instead out of the scalp.  As a result of this condition, Mr. Minnifield's scalp is subject to chronic bacterial infection which manifests itself in swelled lesions and chronic areas of drainage.

Before Mr. Minnifield's transfer to MacDougall-Walker in June 2014, the nursing staff at Cheshire Correctional Institution ("Cheshire") provided Mr. Minnifield with daily scalp scrubs,

---

[1] The relevant facts are taken from Defendants' Local Rule 56(a)(1) Statement [ECF No. 39-14] and Exhibits submitted in support of the Local Rule 56(a)(1) Statement [ECF Nos. 39-2 through 39-13], [ECF No. 40] and [ECF Nos. 49, 50].  Although Mr. Minnifield did not submit a formal Local Rule 56(a)(2) Statement, the Court liberally construes his memorandum in response to the motion for summary judgment, [ECF No. 44], beginning at the "FACTS" section on the first page through the section immediately before the "STANDARD" section on page eight, as a Local Rule 56(a)(2) Statement.   In addition, the Complaint [ECF No. 1] and Amended Complaint [ECF No. 13] may be treated as affidavits or declarations because the contents of those documents are sworn to under penalty of perjury.  *See Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (citing *Pfeil v. Rogers*, 757 F.2d 850, 859 & n.15 (7th Cir. 1985) (noting that documents sworn under penalty of perjury may suffice for summary judgment purposes even if they do not meet all of the formal requirements of a notarized affidavit).

which included the manual expression, or squeezing, of pus from lesions or abscesses on his

scalp.   At Cheshire, medical staff also prescribed antibiotics and pain medication, as necessary,

to treat Mr. Minnifield's folliculitis.

On June 5, 2014, prison officials at Cheshire transferred Mr. Minnifield to MacDougall-

Walker.  At the time of his arrival at MacDougall-Walker, Mr. Minnifield signed a receipt

indicating that he had received an Inmate Handbook which included an explanation of the inmate

grievance procedures.  Mr. Minnifield had received similar inmate handbooks, which also

included explanations of the inmate grievance procedures, at other facilities in which he had

been confined since 1995.

On June 6, 2014, Dr. O'Halloran prescribed two antibiotics to treat infection, one

medication to treat pain, and a topical steroid to treat inflammation of the skin.   He also ordered

the nursing staff to apply warm compresses to Mr. Minnifield's scalp, to express as much pus as

possible from the lesions/abscesses on his scalp, to cleanse his scalp with a special shampoo and

to apply a dry sterile dressing over the area every day for a year.

On June 10, 2014, Nursing Supervisor Erin Dolan issued an order directing the nursing

staff at MacDougall-Walker to perform Mr. Minnifield's scalp care in a sick call room instead of

in the medical unit.  Mr. Minnifield did not want to have the scalp treatment performed in the

sink of the sick call room because he thought the sink was unsanitary and the room lacked

privacy.  He refused treatment for his scalp for three days.

On June 13, 2014, medical staff called Mr. Minnifield to the medical unit.  Mr.

Minnifield met with Nursing Supervisor Dolan and Dr. James O'Halloran.  During the meeting,

Nursing Supervisor Dolan and Dr. O'Halloran told Mr. Minnifield that he should be engaging in

4

his own scalp care.  Dr. O'Halloran stated that expressing or squeezing lesions was beyond the scope of practice for the nursing staff at MacDougall Walker.  He approved an order that required Mr. Minnifield to perform his own scalp care, including the expression of scalp lesions while he was taking a shower.  Medical staff at MacDougall-Walker continued to prescribe antibiotics and pain medication as well as the special shampoo as necessary.   Dr. O'Halloran informed Mr. Minnifield that he should notify the nursing staff if he observed any adverse changes in the condition of his scalp and suggested that the nursing staff would be changing the dressings on his scalp.

On June 10, 2014, Mr. Minnifield submitted an inmate request form to Health Services Administrator Lightner, claiming that the sick call room was unsanitary and that he refused to perform the scalp care in the room.  On June 17, 2014, Adminstrator Lightner authorized Mr. Minnifield to use the shower in the medical unit to perform his scalp treatment.

Over the next year, the nursing staff at MacDougall-Walker would make a notation in his medical records when Mr. Minnifield came to the medical department for his shower and to pick up supplies to treat his scalp condition.  Mr. Minnifield observed that his scalp condition became worse at times.  When unusual or excess discharge became visible on the bandages, he would show the nursing staff his scalp and the bandages that he had applied to his scalp.   If the nurses observed a problem with the condition of his scalp, they would make notations in Mr. Minnifield's medical records and would refer Mr. Minnifield to be seen by a physician.

On July 17, 2014, Mr. Minnifield complained that he had a headache and asked to be seen by someone in the medical department.  He saw Nurse Aimee Chofay, who determined that Mr. Minnifield had already been prescribed Motrin for pain and that his condition was not an

emergency.  Nurse Chofay directed Mr. Minnifield to submit a request to be seen at sick call the following day.

On July 27, 2014, Mr. Minnifield complained that he had not received or been permitted to use a shaver that the medical department had purchased for him to shave his scalp.  On September 4, 2014, Health Services Administrator Lightner disposed of the grievance by providing a shaver to Mr. Minnifield due to his medical need to keep hair off of his scalp.

On August 28, 2014, Mr. Minnifield informed a nurse that he was concerned that his abscesses had become worse.  The nurse scheduled Mr. Minnifield to see a physician, and on August 29, 2014, Dr. O'Halloran met with Mr. Minnifield.  Mr. Minnifield discussed his concerns about performing his own scalp care with Dr. O'Halloran.

During the period from June 5, 2014 to April 30, 2015, Mr. Minnifield was not considered to be indigent, thus the governing policy permitted medical officials at MacDougall-Walker to charge Mr. Minnifield a $3.00 co-pay for every medical visit.  The policy also provided that medical staff are not permitted to deny an inmate treatment on the basis that the inmate cannot pay the $3.00 co-pay.

On July 9, 2015, Dr. Naqvi saw Mr. Minnifield in response to Mr. Minnifield's request to be able to use a head shaver.  Dr. Naqvi noted that Mr. Minnifield's chronic scalp infection appeared to be in better shape.

## III.    Discussion

Defendants assert two arguments in support of their motion for summary judgment.  They contend that: (1) Mr. Minnifield has failed to exhaust his administrative remedies as to two claims in the Amended Complaint; and (2) Mr. Minnifield has failed to allege sufficient facts to

demonstrate deliberate indifference to his medical need.

As a preliminary matter, the Court notes that Mr. Minnifield's reply brief in support of his memorandum in opposition to the motion for summary judgment includes a claim that he served interrogatories on Defendants in June 2016, but Defendants did not respond to this discovery request.  *See* Pl.'s Reply Br. at 4, ECF No. 48.  In addition, Mr. Minnifield contends that he has been unable to obtain affidavits or conduct depositions.  *Id.*

Federal Rule of Civil Procedure 56(d) permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d) requires "submitting an affidavit that includes 'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'" *Whelehan v. Bank of Am.*, 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (applying an earlier and substantially similar version of the Rule)).

When a party submits an affidavit under Rule 56(d) that includes insufficient or conclusory descriptions of forthcoming evidence, and/or fails to explain how that evidence would demonstrate the existence of a genuine issue of material fact, courts routinely deny such requests to continue discovery.  *See, e.g.*, *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004) (affirming district court's implicit denial of discovery where plaintiff failed to "demonstrate that additional discovery was needed in order to decide the jurisdictional issue"); *United States v. Private Sanitation Indus. Ass'n*, 995 F.2d 375, 377 (2d Cir. 1993) (affirming district court's

denial of discovery where affidavit "only speculated about what further discovery might reveal" and failed to "describe[ ] in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"); *Riley v. Town of Bethlehem*, 44 F. Supp. 2d 451, 459 (N.D.N.Y. 1999) (concluding that an affidavit failed to adequately explain "why plaintiff cannot oppose summary judgment without discovery").  Moreover, "[a] court is not required to withhold consideration of a summary judgment motion based on mere speculation." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 638 F. Supp. 2d 360, 372 (S.D.N.Y. 2009).

Mr. Minnifield has not filed an affidavit or declaration in support of his request to continue discovery.  Although he mailed the interrogatories to counsel for Defendants before the deadline for completing discovery expired, counsel has averred that he did not receive the interrogatories until July 20, 2016, after the discovery deadline had expired.   *See* Mot. Compel, ECF No. 36; Opp'n Mot. Compel Ex. A at ¶ 4, ECF No. 37-1.  In addition, Mr. Minnifield does not assert that he made any attempts to resolve the discovery dispute or to contact counsel for Defendants between serving his discovery request and filing the motion to compel.  *See* Mot. Compel at 1, ECF No. 36.  Furthermore, Mr. Minnifield has not demonstrated how any undiscovered evidence could create a genuine issue of material fact.  Thus, the Court concludes that Mr. Minnifield has not met the necessary requirements of Rule 56(d) in order to grant him additional time to conduct discovery.  Accordingly, the Court will not defer ruling on the motion for summary judgment to permit Mr. Minnifield to conduct additional discovery.

### A.   Exhaustion of Administrative Remedies

Defendants argue that Mr. Minnifield failed to exhaust his administrative remedies as to the claims against Nursing Supervisor Greene regarding the use of the shaver in the medical unit as well as the $3.00 co-pay to be treated in the medical unit for issues related to his scalp condition.  Mr. Minnifield argues that he exhausted his available remedies regarding these claims against Nursing Supervisor Greene.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Furthermore, the PLRA requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements."  *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83-84).

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court rejected the judicially created special exceptions to the exhaustion requirement of the PLRA.  *See id.* at 1362 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").  The Court concluded that the PLRA includes a single "textual exception" – that

an inmate must only exhaust remedies that are "available" to him or her.  *Id.* at 1856.  Thus, aside from the availability of remedies to a prisoner, there are no limits on an inmate's obligation to exhaust administrative remedies, irrespective of any "special circumstances."  *Id.* at 1858 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion").  The Supreme Court described three scenarios in which administrative procedures are officially adopted by a prison facility but are not capable of use to obtain relief for the conduct complained about, and therefore are unavailable.  *Id.* at 1859.  First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands."  *Id.* (citations omitted).  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  Thus, the defendants have the burden to prove that Mr. Minnifield has not exhausted his claim prior to filing this action.  *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").

Matters relating to the provision of health services to inmates are grievable and are addressed in Administrative Directive 8.9.  *See* Connecticut Department of Correction

10

Administrative Directive 8.9, effective July 24, 2012, Defs.' Ex. K, ECF No. 39-12.  There are two types of Health Services Review: Diagnosis and Treatment, and Review of an Administrative Issue.  *Id.* at 8.9(9)(A)&(B).  Under Administrative Directive 8.9, an inmate seeking either type of review must first attempt to seek informal resolution before filing a formal request for a Health Services Review.  *Id.* at 8.9(10).  If an inmate is not happy with the informal resolution of his or her issue, he or she may file an Inmate Administrative Remedy Form seeking either (a) a review of a medical decision regarding the diagnosis or treatment, or lack of a diagnosis or treatment, of a medical condition; or (b) a review of a practice, procedure, policy or administrative provision, or the alleged improper conduct of a health services provider.  *See id.* at 8.9(11) & (12).  If an inmate is not satisfied with the response to his or her request for review of a procedure or practice, he or she may appeal the decision within ten business days of receiving the decision.  *Id.* at 8.9(12)(B).

Once an appeal is filed, the health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal." *Id.* at 8.9(12)(C).  If the issue being raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receiving the decision from the from the health services provider or designated facility health services director.  *Id.* at 8.9(12)(D).

The Court concludes that administrative remedies were "officially on the books" at the time of the incidents described in the complaint.  *Ross*, 136 S. Ct. at 1859.  Mr. Minnifield's claims of health services policies and treatment fall within matters that were grievable under the Inmate Grievance Procedure.  *Id.*  Thus, administrative remedies were available to Mr.

11

Minnifield regarding his claims, and he was on notice of the inmate grievance procedures when
arrived at MacDougall-Walker on June 5, 2014.  *See* Minnifield Dep. at 13, Defs.' Ex. B, ECF
No. 39-3; Receipt of Inmate Handbook, Defs.' Ex. C, ECF No. 39-4.  Because Defendants raised
the failure to exhaust administrative remedies as an affirmative defense in their answer, they
have not waived the defense.

Defendants argue that Mr. Minnifield has failed to exhaust his remedies as to two claims:
(1) his claim that Nursing Supervisor Greene's refusal to charge his shaver resulted in his having
to use the shaver in the medical unit, and (2) his claim that Nursing Supervisor Greene would not
permit him to be treated or seen in the medical unit for issues related to his scalp condition unless
he first submitted a sick call request and paid the $3.00 co-pay.  For the reasons outlined below,
the Court agrees with Defendants.

### 1.     Claim Regarding Use of Shaver

In June 2014, Mr. Minnifield informed Nursing Supervisor Greene that his scalp
condition required him to keep his scalp shaved and that the medical staff at Cheshire had
provided him with a shaver to enable him to shave his scalp every two weeks.  *See* Sealed
Medical Record at 17, Defs.' Ex. G, ECF No. 40.  Mr. Minnifield states that, at MacDougall-
Walker, Health Services Administrator Lightner supplied him with his own head shaver;
however, he claims that at some point Nursing Supervisor Greene complained about having to
charge the head shaver for him.  *See* Jul. 2014 Grievance at 3, Defs.' Ex. H, ECF No. 39-9; Am.
Compl. ¶ 16, ECF No. 13.  As a result of Nursing Supervisor Greene's complaints, on February
19, 2015, Health Services Administrator Lightner informed Mr. Minnifield that the medical
department would not provide him with an electric razor and razor blades and that he could

purchase the same items in the prison commissary.  *Id.*; Health Services Corresp., Pl.'s Ex. 4, ECF No. 44.

Mr. Minnifield claims that he did not purchase a shaver and thus was forced to use the shaver in the medical unit to shave his scalp.  Am. Compl. ¶ 16, ECF No. 13.  Mr. Minnifield objected to using the medical unit's shaver because they were used on numerous other inmates and could cause his scalp, as well as other inmates' scalps, to become infected.  *Id.*  Mr. Minnifield does not, however, allege that he exhausted his administrative remedies with respect to his claim that Nursing Supervisor Greene refused to charge his shaver, nor does he address the exhaustion of that claim in his response to the motion for summary judgment.

The Court concludes that Mr. Minnifield has presented no evidence to support a finding that the Department of Correction's grievance procedures were unavailable to him with regard to his claim against Nursing Supervisor Greene regarding his shaver.  The record includes no factual allegations or evidence to suggest that Mr. Minnifield did not have access to or could not take advantage of the Department of Correction's grievance process to fully exhaust administrative remedies with respect to his claim.  Nevertheless, although Nursing Supervisor Greene's alleged actions were briefly referenced in Mr. Minnifield's July 2014 grievance, he never directly made an internal complaint or filed a grievance about those actions.  Because Mr. Minnifield has not demonstrated that the grievance process was unavailable to him with regard to this claim against Nurse Green, he has not met the sole exception to the PLRA's administrative exhaustion requirement.

Defendants have met their burden of demonstrating that there are no issues of material fact in dispute as to whether Mr. Minnifield exhausted his administrative remedies in connection

with his claim that Nursing Supervisor Greene's refusal to charge his head shaver forced him to use the shaver in the medical unit.  Thus, Defendants are entitled to judgment as a matter of law, and Defendants' motion for summary judgment is granted on this ground.

### 2.    Claim Regarding Sick Call Requests

Mr. Minnifield claims that, on July 18, 2014, he spoke to Nursing Supervisor Greene regarding why he was being denied treatment for his scalp condition.  *See* Am. Compl. ¶ 11. Nursing Supervisor Greene allegedly informed Mr. Minnifield that he must submit a sick call request and pay the $3.00 co-pay, if he sought treatment for any medical condition, including his scalp condition.  *Id.*  Mr.  Minnifield disagreed with this requirement.  *Id.*  He argues that he fully exhausted his remedies as to this claim.

The evidence shows that Mr. Minnifield raised this claim in a grievance dated July 29, 2014.  *See* Jul. 2014 Grievance at 2-3, Defs.' Ex. I, ECF No. 39-10.  On August 4, 2014, Nurse Dolan denied the grievance and indicated that any inmate who seeks health services must pay a $3.00 fee for a sick call.  *Id.* at 3.  On August 8, 2014, Mr. Minnifield appealed the denial of his grievance.  *Id.* at 7-8.  On October 10, 2014, Health Services Administrator Lightner denied the appeal and noted that the decision could be appealed within ten days to the Department of Correction's Director of Health Services.  *Id*.

Mr. Minnifield testified at his deposition that he received a copy of the appeal more than ten days after it was issued.  Minnifield Dep. at 31, Defs.' Ex. B.  According to Mr. Minnifield, he did not further appeal the decision because he thought it was too late.  *Id.*  It is evident that Mr. Minnifield was mistaken in concluding that he could not further appeal the decision to the DOC Director of Health Services.

Administrative Directive 8.9(12)(D) provides that if the issue being raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receiving the decision from the contracted health services provider or designated facility health services director.  *See* Administrative Directive at 8.9(12)(D), Defs.' Ex. K.  Thus, if Mr. Minnifield had filed his appeal with the DOC Director of Health Services within ten days of receiving the decision from Health Services Administrator Lightner, the appeal would have been timely.

Mr. Minnifield claims that he was not required to appeal his grievance further because he was not challenging the policy of having to pay for a sick-call request.  Upon review of Mr. Minnifield's initial appeal to Health Services Administrator Lightner, however, it is clear that Mr. Minnifield did challenge this policy, as he argued that he should not have to pay for a sick call request or to be seen by medical staff because his condition was an ongoing condition that medical staff was supposed to be monitoring. Jul. 2014 Grievance at 7-8, Defs.' Ex. I.

Mr. Minnifield presented no evidence to support a finding that the Department of Correction's grievance procedures were unavailable to him with regard to his claim against Nursing Supervisor Greene about the $3.00 sick call fee.  There are no facts or evidence to suggest that Mr. Minnifield did not have access to or could not take advantage of the Department of Correction's grievance process to fully exhaust his claim.  Because Mr. Minnifield has not demonstrated that the grievance process was unavailable to him with regard to the claim regarding the required sick call fee, he has not met the sole exception to the PLRA's administrative exhaustion requirement.

15

While Mr. Minnifield did initiate the administrative complaint process by filing a grievance, Mr. Minnifield did not fully complete the available administrative process by filing a final appeal to the DOC Director of Health Services.  *See Jones*, 549 U.S. at 218 (to properly exhaust available administrative remedies under the PLRA, inmates are required to "'complete the administrative review process in accordance with the applicable'" grievance procedures adopted by the particular correctional institution to which they are confined) (quoting *Woodford*, 548 U.S. at 88).  Based on the evidence submitted by Defendants regarding Mr. Minnifield's failure to complete the available grievance procedures pertaining to his claim against Nursing Supervisor Greene about the co-pay requirement, Defendants have sustained their burden of demonstrating that there are no issues of material fact in dispute as to the exhaustion of administrative remedies with respect to this claim.

The Court concludes that Mr. Minnifield was challenging a health services policy—specifically, the requirement that every inmate must pay a co-pay or fee to be seen by medical staff—and thus he did not fully exhaust his available health services remedies under Administrative Directive 8.9 prior to filing this action.  Accordingly, Defendants' motion for summary judgment is granted at to this claim.

### B.    Deliberate Indifference to Medical Needs

Defendants Dolan and O'Halloran argue that they were not deliberately indifferent to Mr. Minnifield's medical condition.  Mr. Minnifield contends that he has submitted sufficient evidence to create a genuine issue of material fact regarding Defendants' conduct and whether it constituted deliberate indifference to his serious medical need.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Objectively, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted). A medical condition may not initially be serious, but may become serious because it is degenerative, and if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citations omitted). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The plaintiff must also allege that, subjectively, the defendant prison official "act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk.

*See Salahuddin*, 467 F.3d at 279-80.  The fact that a prison official did not alleviate a significant risk that he should have perceived but did not actually perceive does not constitute deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703.  Thus, the "essential test is one of medical necessity and not one simply of desirability."  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (internal quotation marks omitted).

Furthermore, negligence or medical malpractice claims are not cognizable under the Eighth Amendment.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (observing that showing of medical malpractice is insufficient, on its own, to establish deliberate indifference).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation."  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference, namely, when the malpractice involves culpable recklessness, i.e., an act or failure to act by the prison doctor evinces a conscious disregard of a substantial risk of serious harm."  *Hathaway*, 99 F.3d at 553 (internal quotation marks and citation omitted).

Defendants O'Halloran and Dolan do not contest that Mr. Minnifield suffered from a serious medical condition.   Instead, they argue that they were not deliberately indifferent to his scalp condition.

18

### 1.    Dr. James O'Halloran

Mr. Minnifield's medical records reflect that the day after his transfer to MacDougall-Walker, Dr. O'Halloran prescribed pain medication and two antibiotics to treat infection and one medication to treat pain. *See* Physician's Orders, Dolan Aff. at 3, Defs.' Ex. M, ECF Nos. 46-1 and 49. Mr. Minnifield testified at his deposition that he had been prescribed similar, if not the same, medications at Cheshire to treat his scalp condition. *See* Minnifield Dep. at 13-14, Defs.' Ex. B. Dr. O'Halloran also orders that the following treatment be provided by the nursing staff every day for a year: the application of warm compresses to Mr. Minnifield's scalp, expression of as much pus as possible from the lesions/abscesses on his scalp, cleansing of his scalp with a special shampoo, and application of a dry sterile dressing over the area. *See* Physician's Orders, Dolan Aff. at 3, Defs.' Ex. M. This was the same treatment that the nursing staff at Cheshire had performed on Mr. Minnifield's scalp.

Dr. O'Halloran then learned from Nursing Supervisor Dolan that the task of expressing pus out of lesions on an inmate's body was not within the scope of the duties of a correctional nurse. *See* Halloran Aff. ¶¶ 4-5, Defs.' Ex. D, ECF No. 39-5. Based on this information, on June 13, 2014, Dr. O'Halloran discontinued that portion of the daily treatment of Mr. Minnifield's scalp condition. *Id.* at ¶ 5; Sealed Medical Records at 16, Defs.' Ex. G. He instructed Mr. Minnifield to perform the tasks of scrubbing his scalp and expressing pus from the lesions on his scalp while showering. Halloran Aff. ¶ 5, Defs.' Ex. D. He also encouraged Mr. Minnifield to inform nurses of any changes in the condition of his scalp during the times when he would be in the medical department for dressing changes. *Id.* Health Services Administrator Lightner made arrangements for Mr. Minnifield to take his showers in the medical department, to obtain

supplies for his scalp, and to have nurses check the dressings to be applied to his scalp.  Jul. 2014

Grievance at 6, Defs.' Ex. H; Sealed Medical Records at 14, Defs.' Ex. G.

Mr. Minnifield did not agree that he should be performing his own scalp scrubs, and he

expressed his disagreement with this requirement to Dr. O'Halloran at a meeting on June 13,

2014.  Sealed Medical Records at 16, Defs.' Ex. G.  He also filed a grievance in July 2014

expressing his disagreement and, on August 29, 2014, he spoke to Dr. O'Halloran again about

his disagreement with the requirement that he treat himself.   Jul. 2014 Grievance at 2-9, Defs.'

Ex. H; Sealed Medical Records at 21, Defs.' Ex. G.

Mr. Minnifield contends that Dr. O'Halloran was deliberately indifferent to his medical

needs by requiring or permitting him to perform the scalp treatments rather than having medical

personnel perform the specified tasks.  Dr. O'Halloran states that he was aware that Mr.

Minnifield had received scalp scrubs from the nurses at Cheshire, and he explains that he was

also aware that a component of the treatment was the expression of pus from the lesions on his

scalp.  Halloran Aff. ¶ 4, Defs.' Ex. D.  Dr. O'Halloran's recommendations suggest that

cleansing Minnifield's scalp and squeezing or expressing the pus out of the scalp lesions were

necessary and important steps in the treatment of Mr. Minnifield's condition.  *Id.* at ¶¶ 4-5.  In

addition, Mr. Minnifield acknowledges that this treatment had improved his condition.  *See* Pl.'s

Opp. at 4, ECF No. 44; Clinical Record, Pl. Ex. 1, ECF No. 44.  Nonetheless, although the

treatment was necessary, Dr. O'Halloran also believed that Minnifield could perform the hands-

on scalp treatment tasks himself.   Halloran Aff. ¶ 5, Defs.' Ex. D.  Mr. Minnifield has presented

no evidence to suggest that he was not able to perform the tasks of cleansing his scalp,

expressing the pus from the lesions, and applying the necessary bandages to his scalp.

The Court concludes that Dr. O'Halloran's requirement that Mr. Minnifield perform the hands-on scalp treatment tasks himself did not constitute deliberate indifference to a substantial risk of harm to Mr. Minnifield in light of his medical condition.  Even if Dr. O'Halloran's belief that it was acceptable and appropriate for Mr. Minnifield to express pus out of the lesions on his scalp and cleanse his scalp in the shower in the medical department was, in fact, incorrect, that belief could constitute negligence at most, rather than deliberate indifference.  *See Farmer*, 511 U.S. at 844 (acknowledging that prison officials could prove they were subjectively unaware of the risk to inmate health if they demonstrated that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"); *Salahuddin*, 467 F.3d at 280-81 (2d Cir. 2006) (noting that a "defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere).   Because the evidence does not raise a genuine factual question concerning whether Dr. O'Halloran's conduct constituted deliberate indifference to Mr. Minnifield's medical needs, Dr. O'Halloran is entitled to judgment as a matter of law on this Eighth Amendment claim.

Mr. Minnifield also contends that Dr. O'Halloran's failure to examine his scalp during the August 29, 2015 appointment constituted deliberate indifference to his medical condition. There is no indication in Dr. O'Halloran's notes to suggest that he, in fact, examined Minnifield on that date.  Sealed Medical Records at 12, Defs.' Ex. G.  Rather, the appointment was made to discuss an issue with regard to Mr. Minnfield's use of a razor to shave his scalp.  *Id.*  There is a notation by Dr. O'Halloran that Mr. Minnifield had been examined by dermatologists in the past and that he would review the consultation reports to determine if any other treatments had been

recommended or suggested.  *Id.*  Dr. O'Halloran further states that he did not receive any complaints that Mr. Minnifield's scalp condition had become worse after Mr. Minnifield began to express pus from the lesions on his own scalp in June 2014.  *Id.*, Halloran Aff. ¶ 7, Defs.' Ex. D.

It is not clear from the medical records whether Mr. Minnifield described his concerns about abscesses or lesions on his scalp during the August 29, 2015 appointment with Dr. O'Halloran.  Mr. Minnifield states in his Amended Complaint that he was seen by "the doctor" on August 29, 2015, who explained that Nursing Supervisor Dolan had recommended that he discontinue his order that required a nurse to perform his scalp treatments.  *See* Am. Compl. at ¶ 14, ECF No. 13.  According to Mr. Minnifield, the doctor did nothing to assist or help him.  *Id.*

Mr. Minnifield does not claim to have made further requests for treatment from the nursing staff or Dr. O'Halloran, nor does he state that he identified new problems with the condition of his scalp.  There are no other entries in Minnifield's medical records to suggest that Dr. O'Halloran treated him after August 29, 2015, and Mr. Minnifield does not contend that Dr. O'Halloran saw him or provided him with further treatment after that date.  Under these facts, Dr. Halloran's alleged failure to assist or treat Mr. Minnifield on a single occasion in August 2014 does not constitute deliberate indifference to medical needs.

The Court concludes that Defendant O'Halloran has demonstrated the absence of a material fact in dispute regarding his treatment decisions in connection with Mr. Minnifield's scalp condition.  Dr. O'Halloran is entitled to judgment as a matter of law with respect to Mr. Minnifield's deliberate indifference to medical needs claim.  Accordingly, Defendants' motion

for summary judgment is granted as to the Eighth Amendment claim against Defendant O'Halloran.

### 2.    Nursing Supervisor Dolan

Mr. Minnifield asserts several claims against Nursing Supervisor Dolan regarding treatment for his scalp condition.  He first claims that Nursing Supervisor Dolan convinced Dr. O'Halloran to eliminate the portion of the treatment plan for his scalp condition that involved the hands-on cleansing of his scalp by nurses.  He also asserts that she attempted to coerce him into accepting the revised treatment plan.  Mr. Minnifield alleges that, before his appointment with Dr. O'Halloran and Nursing Supervisor Dolan on June 13, 2014, Nursing Supervisor Dolan spoke to custody officials about the possibility of transferring him back to Cheshire because Cheshire medical staff could offer treatment that MacDougall-Walker medical staff could not offer.

Nursing Supervisor Dolan has filed an affidavit in which she states that, when she learned about the concerns of nurses at MacDougall-Walker in response to Dr. O'Halloran's order, requiring them to treat Mr. Minnifield's scalp by expressing as much pus as possible from lesions on his scalp, she reviewed the Connecticut Managed Health Care nursing practice policies.  *See* Dolan Aff. ¶ 3, Defs.' Ex. M.  Those policies indicated that squeezing or expressing pus from lesions was outside of the authorized practice of correctional nurses.  *Id.* She states that she informed Dr. O'Halloran of the policies, and he decided to revise his order regarding the hands-on treatment of Mr. Minnifield's scalp condition.  *Id.*

The policies which are attached to Doctor of Nursing Mary Ellen Castro's affidavit support the interpretation of Nursing Supervisor Dolan and Dr. O'Halloran.  *See* Nurse Practice

Manual, Castro Aff. at 4-7, Defs.' Ex. F, ECF No. 39-7.  Furthermore, Dr. Monica Farinella,

Acting Director of Correctional Managed Health Care at the University of Connecticut Health

Center, concurs with Dr. Castro regarding the meaning of the nursing practice policies governing

the treatment of abscesses and lesions by correctional nurses.  *Id*.; Farinella Aff. at ¶ 3, Ex. E,

ECF No. 39-6.  Mr. Minnifield has offered no evidence to contradict these affidavits or to

suggest that Nursing Supervisor Dolan's conclusions were inaccurate.

     Mr. Minnifield also claims that Nursing Supervisor Dolan spoke to Captain Corl prior to

the meeting with Dr. O'Halloran on June 13, 2013 regarding a request to transfer Mr. Minnifield.

However, Ms. Dolan claims that she never approached or spoke to Captain Corl regarding such a

request.  *See* Dolan Aff. ¶ 6, Defs.' Ex. M.  According to Nursing Supervisor Dolan, it would

have been unnecessary to speak to Captain Corl about an inmate transfer because the medical

department has the authority to transfer inmates without the consent of the warden or other

prison staff.  *Id.*  In response, Mr. Minnifield has offered a copy of a handwritten notation from

an individual referred to as Captain Payne, who states that he contacted Captain Corl regarding

Mr. Minnifield's medical condition.  *See* Payne Letter, Pl.'s Ex. 2, ECF No. 44.  According to

this letter, Captain Corl recalled Minnifield's medical condition, but did not recall any

interaction with Nursing Supervisor Dolan.  *Id.*  According to this letter, Captain Payne was told

by Captain Corl that medical department officials can transfer inmates out of a facility without

the assistance of custody officials.  *Id.*

     The statements of Captain Payne and Captain Corl constitute hearsay and cannot be used

to create an issue of material fact.  *See Garcia v. Brown*, 442 F. Supp. 2d 132, 143 (S.D.N.Y.

2006) ("Needless to say, these hearsay (and double hearsay) statements are not competent

evidence and so cannot raise a genuine issue of material fact.").  Even if the statements of

Captains Payne and Corl could be considered, however, they simply support Nursing Supervisor

Dolan's affidavit regarding her claim that it would have been unnecessary to contact custody

about transferring Mr. Minnifield back to Cheshire.

The allegations against Nursing Supervisor Dolan regarding her role in facilitating a

change in the hands-on treatment of his scalp condition do not rise to the level of deliberate

indifference to a serious medical need.   As indicated above, Mr. Minnifield has not presented

any evidence to suggest that the revised plan of treatment for his scalp condition was medically

inappropriate.  The fact that correctional nurses previously performed the hands-on scalp scrubs

and expression of pus from lesions on Mr. Minnifield's scalp does not necessitate the conclusion

that a later decision requiring Mr. Minnifield to perform the same treatment on himself

constituted deliberate indifference on the part of Nursing Supervisor Dolan or Dr. O'Halloran.

There is no evidence to support the allegation that Nursing Supervisor Dolan spoke to

Captain Corl about a transfer. Furthermore, it is undisputed that, although medical personnel may

effect a transfer without the consent of custody staff, medical personnel did not transfer Mr.

Minnifield from MacDougall-Walker.  Accordingly, there is no support for the allegation that

Nursing Supervisor Dolan improperly attempted to coerce Mr. Minnifield to accept the treatment

offered by Dr. O'Halloran for his scalp condition.  The allegations against Nursing Supervisor

Dolan regarding the implementation of the revised hands-on treatment plan for Mr. Minnifield's

scalp condition amount to a disagreement regarding treatment, not an unreasonable condition on

the provision of treatment or the refusal of treatment as punishment or for some other invalid,

non-medical reason.  A disagreement regarding treatment does not rise to the level of deliberate

indifference to medical needs.  *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Dean v. Coughlin*, 804 F.2d 207 215 (2d Cir. 1986) ("essential test [in determining whether provision of a particular type of medical treatment constitutes deliberate indifference by medical officials] is one of medical necessity and not one simply of desirability") (internal quotation marks omitted).

Finally, the Amended Complaint includes a third claim against Nursing Supervisor Dolan related to a situation in which Nurse Aimee Chofay allegedly refused to treat Mr. Minnifield on July 17, 2014.   On that date, Mr. Minnifield claims to have experienced head pain and dizziness, making it difficult to sleep.   Am. Compl. ¶ 10, ECF No. 13.  A correctional officer escorted Mr. Minnifield to the medical department, and Mr. Minnifield spoke to Nurse Chofay.  *Id.* According to Mr. Minnifield, Nurse Chofay refused to treat him because Nursing Supervisor Dolan had directed her not to do so.  *See id.*

Nurse Chofay has filed an affidavit in which she states that, on July 17, 2014, an officer brought Mr. Minnifield to the medical unit because of complaints of a severe headache.  *See* Chofay Aff. at ¶ 4, Defs.' Ex. N, ECF Nos. 46-1 and 50.  Nurse Chofay assessed Mr. Minnifield and determined that he had been prescribed Motrin for pain relief and was not in need of emergency care.  *Id.*  Mr. Minnifield became upset and returned to his housing unit.   *Id.* at ¶ 5. Nurse Chofay states that she did not deny Mr. Minnifield emergency treatment; rather, she determined that his condition did not constitute an emergency that required immediate treatment and instructed him to submit a sick call request.  *Id.* at ¶ 6.  Nurse Dolan insists that she has

never instructed Nurse Chofay to deny Mr. Minnifield or any other inmate emergency care.  *Id.* at ¶ 7; Dolan Aff. ¶ 5, Defs.' Ex. M.

Mr. Minnifield has offered no evidence to contradict these affidavits.  Thus, he has not shown that either Nurse Chofay or Nursing Supervisor Dolan were deliberately indifferent to his medical needs on July 17, 2014.

Mr. Minnifield has failed to submit evidence to demonstrate that Nursing Supervisor Dolan was deliberately indifferent to his serious scalp condition at any time after his arrival at MacDougall-Walker on June 5, 2014 through the filing of the Amended Complaint on March 24, 2015.  Thus, Defendants' motion for summary judgment is granted in favor of Defendant Dolan as to the Eighth Amendment claim of deliberate indifference to medical needs.

## IV.   Conclusion

The Defendants' Motion for Summary Judgment [**ECF No. 39**] is **GRANTED**.   The Clerk of the Court is directed to enter judgment for Defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 30th day of March, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE